Our final case for this morning is Karanja against Acting Attorney General Wilkinson. And we should have Ms. Wooten and Mr. Ramnitz. We appear to have everybody. So, Ms. Wooten, you may proceed. Good morning, and may it please the Court. My name is Whitney Wooten, and I represent the petitioner, Philip Karanja. In 2018, Mr. Karanja filed motions to reconsider and reopen his 2006 removal order within weeks of the Supreme Court's decision in Pereira. The immigration judge denied both motions, and the Board affirmed. This petition for review followed. There are three issues presented today. Whether Mr. Karanja suffered prejudice when he received no notice at the date and time of his hearing. Whether the Board erred in affirming the immigration judge's denial of his motion to reopen. And whether the immigration court had jurisdiction at all in 2006, when Mr. Karanja was served with a deficient notice to appear. That was never subsequently cured by a notice of hearing. I was just going to say, before you launch into those issues, I would like you to comment on the pending case of Nice-Chavez against Barr, which is actually now against Wilkinson, which is pending before the Supreme Court, and to ask your opinion whether we should suspend proceedings here until we hear what the Supreme Court says in Nice-Chavez. I do not believe that it's necessary to suspend these proceedings. Nice-Chavez was about whether a deficient notice to appear can be subsequently cured by a notice of hearing. And it is mostly, it's very clear to me in this case that Mr. Karanja never received his subsequent notice of hearing. But he was at the hearing. I mean, the interesting thing about this case is that he receives a notice to appear. It's the same old defective notice that we've seen in a million cases. But the hearing is set for a very short period of time after, and he attends it. Maybe because he's just taken there, but he attends pro se. So the problem can't be the level of notice. He's right there at the hearing, whether it's enough time and whether being required, you know, on a very short leash to defend yourself and not have time to get a lawyer. I mean, I could imagine arguments about prejudice that you could make, but notice doesn't seem to me to be the problem here. Yes, I do have a lot to say about the prejudice issue, but also that actual notice should not be a cure in this case. When the statute demands that prior notice be provided, indeed 10 days prior notice. And here, even if Mr. Karanja had received his hearing notice, it was only issued three days before his hearing. So as you noted, he was in detention. He was physically taken to the hearing and had no control over what happened. So this court should hold that the statutory requirements for notice must be met. So can he show prejudice, though, if any argument he might have made would have been doomed? The board certainly is very concerned here about the fraud in the initial entry into the country. And how does he get past that? The fact is that we don't know all of the positive and negative equities that were involved in this case. He was eligible for voluntary departure and could have made a case for that. The weighing of the equities could have gone in his favor, especially because after his mandatory or his detention, his removal period expired. He was released on an order of supervision, which had a discretionary element. So it's definitely plausible that the court could have exercised discretion in his favor. But the truth is that we don't know what the positive equities specifically were in his case. And that's why we are asking for a remand on this issue of prejudice. I can ask the government this question. But, you know, yes, he was released on supervision. And then a decade wanders by between 2006, I guess, and 2016, more than a decade, really, because here we are in 2021. Did the government ever try to follow up? Or was he just, you know, in this limbo status during all that time? It's not clear to me. Definitely, there's nothing in the records that I saw. We did receive a FOIA response in this case. And it appears that Mr. Curran just filled out a request for a travel document while he was in detention or maybe shortly thereafter. But then you're right. He was in this limbo state. And so that's why a remand for further fact-finding would be useful as well. So he was released at that point or shortly thereafter and then has been living in the U.S. for that period of time? Yes, he was released on an order of supervision and has not departed the U.S. since. Was he ever given a date ordered to depart? Not to my knowledge. Was there any contact with him in the interim? Did he have to report to somebody or do anything to say what he's doing or where he is? Yes, I believe he did have to report under the order of supervision. But as I said, I don't have that information. And so we would like to look further into that and for a court to decide how that impacts this issue of prejudice. And also whether his timing was excusable to contest this claims processing rule violation. Because if he was in this limbo status for many years, didn't know what was going to happen to him, it is conceivable that he would have waited and not sought further relief. Even if you can get around prejudice here, that he didn't have enough time to prepare for the hearing or didn't have enough time to get a lawyer, how do you get around the other aspect of forfeiture, the excusable delay? Because this lack of notice or lack of the one complete document, to the extent you have to have it in one, including all the information you need, that's an argument that was available to him years ago. And he didn't raise it until recently. So how do you get around excusable delay, especially given that he's been in the United States? He doesn't have an argument that he was stuck in some other country and couldn't communicate with someone. Right. In addition to this idea that he was in some sort of limbo, not knowing when and if he would be removed, a challenge on this issue prior to FORAMER would have been futile. And Judge Wood laid out these two opposing ideas in Ortiz-Santiago that, on the one hand, Pereira represented a genuine change in circumstances, overturning the board and almost every circuit in the nation on this issue of what happens when there's a defective document. But futility doesn't mean no excusable delay. And I don't think Ortiz-Santiago says that. Right. So the delay in this case, in addition to him not knowing what was going to happen, he filled out the application for travel documents and had not been removed by the government. Requiring petitioners to spend the time and money to challenge firmly entrenched circuit precedent is too high a standard, especially where, you know, Mr. But excuse me, you're also, I think, making, I hadn't thought about this before now, but if he was really reporting in and staying in touch while he was on supervision, he's different from a lot of other people that we see, if that's the case. And it may be that he thought he was doing everything he needed to do to keep his case in a regular status. I don't know. I mean, but this is an unusual circumstance if that turns out to be the fact. If he decided to slip below the radar screen, as some people do, that's a different matter altogether. Right, Your Honor. And as I said, I don't know the status of his reporting under his order of supervision. But I thought that is a reason that we could remand this case for further fact finding. Not only to find out what happened at his hearing when he was unrepresented and appeared without prior notice, but also to to determine this issue of excusable timing. All right. You might want to save. I mean, there's very little left. Let's save your last 15 seconds. I will. I will. Thank you, Your Honor. OK, fine. Mr. Ramnitz. You're on mute. May I please record, Your Honors? Tim Ramnitz on behalf of the United States Attorney General. The Board did not view this discretion in denying Petitioner's untimely motion to reopen, claiming a jurisdictional defect under prior recessions. As Petitioner noted in his appellate filings to the Board, this Court issued Ortiz-Santiago, which foreclosed this claim. Not a jurisdictional defect, the lack of date and time of proceedings and notice to appear. So what Petitioner did before the Board is pivoted and has brought forth the claim now before the Court about a defective notice of hearing added to a defective notice to appear that adds up to a jurisdictional defect. But for the same reasons Ortiz-Santiago, that claim must fail because there's simply nothing in the statutes that states this. There's nothing in the regulations that states this. Whereas Ortiz-Santiago at least had a regulation to point to, Petitioner cannot point to a regulation here about a jurisdictional defect in this case. Well, true. Let's just get jurisdiction off the table. But Ortiz-Santiago does leave room for people who either make a timely objection or if they make a late objection, the delay is excusable and they can show some form of prejudice because claims processing rules are, in fact, rules that are supposed to be followed. And the Board for years was not following the particular rule for notices to appear. So what concerns me about Mr. Karanja's case is precisely one of the things that Ortiz-Santiago hinted at. If you only know for a three-day time period that you have a hearing that's going to change your life, I don't think we would allow a criminal trial to be scheduled within three days. I don't think we would allow an eminent domain case to be scheduled within three days. So what is in the notice is one thing, but what amount of time precedes the notice and the hearing or elapses between the notice and the hearing is another aspect of due process. It's actually an aspect of the regulations and even due process. So that's what worries me about Mr. Karanja's case, that there just wasn't enough time for him to make the kinds of arguments that we're all sitting around saying, oh, well, he can make this argument, that argument. A layperson wouldn't think of it. Maybe a trained lawyer might have, in which case forfeiture concerns or waiver concerns would be fine. But there's an administrative irregularity here that's troublesome. Irregularity. I understand the court's concern because there is a problem in the case there. There is a violation of the 10-day rule. His hearing was scheduled too early following service of his notice of appearance. But as a claims process and challenge, we do still have to show time limits and reason for delay and prejudice. And we can start with prejudice as the positive of this case. In October 27, 2006, before this final hearing, he'd only been in the United States for two and a half months. He was unquestionably ineligible for all forms of relief. We said in both Chen and in a subsequent case to Chen, Mraz-Soseto, that prejudice is not based on the merits of the arguments. It's based on prejudice suffered at the time of the hearing. And the fact that he didn't have time to get a lawyer, the fact that he didn't have time to look into himself what his options might be, why wouldn't that be enough at least to raise a question of prejudice that if you meet the other forfeiture aspects would be sufficient to remand it? Well, as I was explaining, prejudice looked at what options were available, as the panel just noted, at the time of the hearing. And there were none. He had no options. He conceded this except for preconclusion voluntary departure. And that's not exhaustive. We've never claimed that before, that he was eligible for this form of relief. But even going back to 2006, he essentially got voluntary departure because he was released on order of supervision and not removed from the United States. But that's not the same thing, to be clear. But isn't that a merits argument as opposed to a prejudice from lack of timely notice of the hearing? I think it's the same here because you have to show what else would have happened but for the error in this case. And you can't show what else would have happened. He was not eligible for cancellation of relief. He lacked a qualifying relative in 2006. He's not eligible for adjustment status. He had no visa petition filed on his behalf. He's never made a claim for asylum or withholding removal or cap protection. There is simply no way for him to remain in the United States. Even assuming he was eligible for preconclusion voluntary departure, that's not a solution to his problems. That's not an ability to remain here in the States. That's an ability to depart to Kenya on your own. I'd also like to clear up why— But before we move on, do you know the answer to some of the questions that we asked Ms. Wooten as to what happened in the interim decade, where he was, was he in touch, et cetera? I was just about to go into that. I did contact Immigration and Testimony Enforcement in preparation for this hearing to myself learn what happened because why was he around for so long after his removal order was issued? And he was issued an order of supervision, but there was problems repatriating him in 2006 to Kenya. They could not obtain personal identification documents from him or from the Kenyan government at the time, and that's why he was released on order of supervision, not as a matter of discretion, really, but because of detention statutes that require, which the court might be familiar with, a significant likelihood of reasonable removal in the future. At that point, we could not say that, so we had to release him on order of supervision first, Supreme Court precedent, not because of any act of discretion he received. And meanwhile, he married a United States citizen, and then he, so what he had also, I should tell the court, he had an anonymous action in the Western District of Washington challenging the Nile and I-130 visa petition filed on behalf by his United States citizen wife. That's what he's been pursuing in the meantime. What's the status of the Western District of Washington? I'm getting a terrible echo when you speak. It's a little bit hard to hear you. But what's the status of the Western District of Washington matter? It's still pending. The anonymous action is still pending as far as I know. I checked it last week, and I believe it was still pending. But what the point of that was, was just to simply explain that he was trying to adjust status through this marriage. And when that failed, that's when he turned to filing a motion to reopen for the Immigration Court. And that's not diligence. That's not exercising or showing his undue delay. That's just showing that he failed at one endeavor. And so turned to last-ditch effort trying to reopen his proceedings under PRIARA so he can adjust status in front of the Immigration Court. And that also shows he has been in contact with the system. He has been litigating his case prior to seeking to reopen for the Immigration Judge. So this claim that he was ignorant of the law is a bit misleading, I would say, because he was pursuing a legal right just in a different capacity prior to filing his motion to reopen. In that process, though, you reply at least that he was making contact with the authorities. Is that correct? Yes, sir. I believe he was complying with order of supervision. He was complying. He was complying. Is that what you said? Yes. I have no indication that he was ever not in compliance with order of supervision. So supervision requires some continued contact. Is that correct? Yes. And he was meeting those obligations? As far as I know, I have not heard from ICE about the terms of his order of supervision. What we discussed was the inability to repatriate him, and that's why the order of supervision was issued. These are all facts that Petitioner did not offer in front of the agency, and that's why we don't have them. And that's also what I want to note, because my time runs out, that while we're discussing the claims processing challenges on the merits, Petitioner had benefited the court's decision to order Santiago before the board, and in fact, cited that decision, but didn't make any argument justifying a claims processing argument. Instead, only focused on the jurisdictional aspect. Petitioner could have made a timeless argument, could have made a prejudice argument to the board, but did not. These claims are not exhaustive. I recognize the court has reached these issues in Chen and O.T. Santiago regardless of not being raised in front of the board, but Chen does also note that exhaustion is a good reason not to address a claims processing challenge, unless it's otherwise futile, which I believe it is futile in this case, because there's simply no prejudice in 2006. Unless the panel has any other questions, I. I see none. All right. Thank you very much, Mr. Ms. Wooden, you were nearly out of time, but I'll give you a minute to rebut. Thank you, Your Honor, and I would like to address your question about the status of our case in the Western District of Washington. It is not the case that his marriage based petition, is dead. We are actually in productive settlement negotiations on that case. The reason that it was denied, the I-130 was denied was because the government said that he couldn't establish his identity. And yet we have his entire integration history, which shows that the government has agreed and indeed proven that he is Philip Karanja. So we are negotiating. He has provided the documents requested by the government. And we hope to have a favorable outcome in that case soon. My final comments are on the issue of fairness is that the government did not meet the requirements of 1229 a and providing the required amount of notice. And this court should hold that it should have done. So thank you. All right. Thank you very much. Thanks to both counsel. The court will take the case under advisement and we will be in recess.